UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TRUSTEES OF PLUMBERS AND
STEAMFITTERS LOCAL UNION NO. 22
JOINT APPRENTICESHIP TRAINING
TRUST FUND,

        Plaintiff,

   v.

MICHAEL S. ROSSMAN,

        Defendant.

19-CV-00414-LJV
DECISION & ORDER

On March 28, 2019, the plaintiff, the Trustees of the Plumbers and Steamfitters Local Union No. 22 Joint Apprenticeship Training Trust Fund ("the Trustees"), commenced this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. Docket Item 1. The Trustees allege that the defendant, Michael S. Rossman, failed to repay a scholarship loan. *Id.* at 2.

On October 8, 2019, the Trustees asked the Clerk of Court to enter a default against Rossman because he had failed to answer the complaint. Docket Item 5. The Clerk of Court granted that request two days later. Docket Item 6. On January 31, 2020, the Trustees moved for a default judgment against Rossman. Docket Item 7. To date, Rossman has not entered a notice of appearance or otherwise defended this action.

For the reasons that follow, the Court denies the Trustees' motion without prejudice.

**BACKGROUND**

The following facts are taken from the complaint and accepted as true for purposes of this motion. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[A] default is an admission of all well-pleaded allegations against the defaulting party.").

In September 2012, Rossman joined the five-year apprenticeship training program organized by the Plumbers and Steamfitters Local Union No. 22 ("the Union"). Docket Item 1-1 at 16-22. The program is funded by contributions from employers who are signatories to the Union's collective bargaining agreement. Docket Item 1 at 2. Because "the training of the apprentices in the specialized skills necessary for employment in the plumbing industry" requires "a significant sum of money," apprentices who wish to engage in training must "agree[ ] to repay the [Union's Apprenticeship Training Trust Fund ("the Fund")] either in cash payments or in-kind credits received by working [for signatory employers]." *Id.* at 2-3.

Under the terms of the scholarship loan agreement, the cash value of each of the first four years of the apprenticeship training program is $2,000; the value of the fifth year is $8,000. *Id.* at 3. The in-kind-work value is set at five years' work for each year of the program, except that the years of work may run concurrently. If an apprentice completes fewer than five years' work, he receives in-kind credit as follows: 10% for the first year; 15% for the second; 20% for the third; 25% for the fourth; and 30% for the fifth. The table below illustrates the in-kind repayment option for an apprentice who began training in 2012.

|    | 2012  | 2013  | 2014  | 2015  | 2016   | 2017    | **2018**  | 2019   | 2020   | 2021 |
|----|-------|-------|-------|-------|--------|---------|-----------|--------|--------|------|
| Y1 | $2000 | $1800 | $1500 | $1100 | $600   | $0      |           |        |        |      |
| Y2 |       | $2000 | $1800 | $1500 | $1100  | $600    | **$0**    |        |        |      |
| Y3 |       |       | $2000 | $1800 | $1500  | $1100   | **$600**  | $0     |        |      |
| Y4 |       |       |       | $2000 | $1800  | $1500   | **$1100** | $600   | $0     |      |
| Y5 |       |       |       |       | $8000  | $7200   | **$6000** | $4400  | $2400  | $0   |
|    |       |       |       |       |        |         |           |        |        |      |
|    | $2000 | $3800 | $5300 | $6400 | $13000 | $10400  | **$7700** | $5000  | $2400  | 0    |

**Table 1: Deferred Loan Repayment Amount**

Rossman signed promissory notes in September 2012, September 2013, September 2014, September 2015, and September 2016, totaling $16,000. *See* Docket Item 1-1 at 2, 5, 10, 15, 20. Those notes specify that "if legal action is required to collect this Demand Note[,] . . . [Rossman] will pay interest at the prime rate prevailing as determined by the M & T Bank of Buffalo, NY, [f]rom the date of this note, plus reasonable attorneys' fees and all court costs." *Id.* Rossman left the apprenticeship training program in 2018 after completing six full years of work for signatory employers. Docket Item 1 at 3. Accordingly, and based on Table 1 above, he owes the Trustees $7,700.00. *Id.*

The Trustees commenced this action on March 28, 2019, to collect the outstanding loan balance. Docket Item 1. They filed an affidavit of service on April 12, 2019, averring that on April 3, 2019, they left a copy of the summons and complaint with Rossman's girlfriend at his last known address and that they also mailed copies to the same address. Docket Item 4. Rossman has not entered a notice of appearance or otherwise defended this action.

**DISCUSSION**

Rule 55 of the Federal Rules of Civil Procedure sets forth the multi-step and multi-pronged process for obtaining a default judgment. *See generally Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Rule 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). If, as here, the plaintiff seeks a judgment for an amount other than a "sum certain," she then "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b). That step, in turn, involves a multi-pronged analysis: (1) legal liability, (2) equitable considerations, and (3) damages calculation. The Clerk of Court previously entered a default against Rossman, so the Court proceeds to the Rule 55(b) considerations.

To determine whether to enter a default judgment, the court first decides whether "liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)). "[I]t [is] the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).

Courts then consider whether equitable factors favor the entry of a default judgment. "Court[s] [are] guided by the same factors [that] apply to a motion to set aside entry of a default." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114,

4

123 (E.D.N.Y. 2011). Those factors include "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron*, 10 F.3d at 96 (citations omitted). Willfulness encompasses "conduct that is more than merely negligent or careless" and is appropriate "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citation omitted). Prejudice requires a showing of more than "delay alone"; instead, the delay must have caused the loss of evidence, created increased difficulties in discovery, or provided increased opportunity for fraud and collusion. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). And to present a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *McNulty*, 137 F.3d at 740 (quoting *Enron*, 713 F.2d at 98) (additional citation omitted).

Finally, if a court determines that entry of default judgment is legally and equitably appropriate, it determines the amount of damages. Although a party's default "is deemed to constitute a concession of all well[-]pleaded allegations of liability," it "is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The district court [therefore] must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "If . . . the amount of damages must be ascertained, the court may conduct a hearing or order a reference." *Enron*, 10 F.3d at 95 (citing Fed. R. Civ. P. 55(b)(2)).

"The dispositions of motions for . . . defaults judgments . . . are left to the sound discretion of a district court."  *Id.* at 95.  But as a rule, "defaults are generally disfavored and are reserved for rare occasions."  *Id.* at 96.  *Cf. New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (characterizing a default judgment as "the most severe sanction [that a] court may apply" and explaining that although "[a] motion to vacate a default judgment is addressed to the sound discretion of the district court, . . . [the Second Circuit] ha[s] expressed a strong preference for resolving disputes on the merits" (citations omitted)).

Considering these factors, the Court denies the Trustees' motion for a default judgment.  The Trustees have not satisfied the first prong of the Rule 55(b) analysis—that is, they have not "established" liability "as a matter of law."  *See Bricklayers*, 779 F.3d at 187.[1]

The civil enforcement provision of ERISA provides:

> A civil action may be brought . . . by a . . . fiduciary (A) to enjoin any act which violates . . . the terms of [an employee benefits plan], or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce. . . the terms of [a] plan.

29 U.S.C. § 1132(a)(3).  The Trustees therefore must demonstrate that (1) they are fiduciaries, (2) the apprenticeship training program is an employee benefits plan, (3) Rossman has violated the terms of that plan, and (4) they seek equitable relief.

The Trustees' allegations appear adequate as to the first three requirements.  Courts agree that "apprenticeship training program[s] and the fund[s] providing for the program are 'welfare benefit plans' under ERISA, 29 U.S.C. § 1002(1)(A)."  *Honolulu*

---

[1] In light of this finding, the Court need not analyze the remaining two prongs of the default judgment analysis.

6

*Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster* ("*Foster I*"), 186 F. Supp. 2d 1114, 1117 (D. Haw. 2001), *aff'd*, 332 F.3d 1234 (9th Cir. 2003) ("*Foster II*"); *see also Milwaukee Area Joint Apprenticeship Training Committee for the Electrical Industry v. Howell*, 67 F.3d 1333, 1337 (7th Cir. 1995).  Courts also agree that the trustees of such plans are fiduciaries under ERISA, 29 U.S.C. § 1002(21).  *See, e.g.*, *Howell*, 67 F.3d at 1337.  *Cf. Foster I*, 186 F. Supp. 2d at 1117 ("The parties do not dispute that [the fund-trustee p]laintiff is a fiduciary and [the apprentice-d]efendant a beneficiary of the plan.").  And, taking the Trustees' allegations as true, Rossman has violated the terms of the promissory notes he signed in connection with the apprenticeship training program.

But the Trustees' claim falters at the fourth requirement.  Although the Second Circuit has never squarely addressed the issue, the Ninth Circuit has found that fund trustees may not recover unpaid scholarship monies under ERISA because such damages do not constitute "appropriate equitable relief."  The court explained:

> The Supreme Court cases interpreting [section] 1132(a)(3) mark a steadily shrinking field of "appropriate equitable relief" available to plan fiduciaries.  In *Mertens v. Hewitt Assoc*[*iates*]*,* 508 U.S. 248 (1993), the Supreme Court held that the "equitable relief" available under that subsection includes only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  *Id.* at 256 (emphasis in original).
>
>  . . . [In *Great-West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204 (2002),] the Supreme Court distinguished between legal and equitable restitution for purposes of [section] 1132(a)(3).  The Court explained that equitable restitution is available only in limited circumstances, where there is an identifiable *res*:
>
>> [A] plaintiff could seek restitution in equity . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. . . .  But where the property

7

> sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

[*Knudson*]*,* 534 U.S. at 213-14 (citations, alterations, and internal quotation marks omitted). In contrast, legal restitution is a remedy where there is no identifiable *res*:

> In cases in which the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract. . . .

*Id.* at 213 (citations and internal quotation marks omitted, emphasis in original). Thus equitable restitution is available where the specific *res* or funds can be identified and attached by equitable lien or constructive trust, but not where the plaintiff seeks to impose general personal liability as a remedy for the defendant's monetary obligations.

*Foster II*, 332 F.3d at 1237-38 (second and third ellipses in original).

Because the plaintiff-trustees in *Foster* "s[ought] to impose general personal liability on [the defendant-apprentice] for the costs [the trustees] advanced under [a] scholarship loan agreement," the Ninth Circuit found that the trustees did not seek equitable restitution. *Id.* at 1238. Stated differently, because "[t]he basis for [the trustees'] claim [wa]s . . . that [they were] contractually entitled to *some* funds for benefits that they conferred[,] [t]he kind of restitution that [they] s[ought] . . . [was] not equitable—the imposition of a constructive trust or equitable lien on particular

8

property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents." *Id.* (quoting *Knudson*, 534 U.S. at 214) (fourth alteration in original).  "That the loan agreement specifically provide[d] for the remedies sought," the court continued, "reinforce[d] the conclusion that [the matter was] essentially an action at law to remedy [the apprentice's] breach of a legal obligation."  *Id.*[2]

Here, the Trustees assert in their three-page memorandum of law that the "failure to repay training costs as required by a scholarship plan is a breach of contract actionable under ERISA."  Docket Item 7-6 at 2 (citing *Howell*, 67 F.3d 1333).  Aside from this assertion and lone citation, the Trustees otherwise make no effort to spell out why "th[eir] uncontroverted allegations, without more, establish [Rossman's] liability on [that] cause of action," *see Gunawan*, 897 F. Supp. 2d at 83—that is, why Rossman is liable for *breach of contract under ERISA*.  As the First Circuit has observed, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (Selya, *J.*).  That admonition applies with special force here, where the relief sought is "the most severe sanction [that a] court may apply."  *See Green*, 420 F.3d at 104.

---

[2] *Cf. Mayhew v. Hartford Life & Acc. Ins. Co.*, 822 F. Supp. 2d 1028, 1034 & n.4 (N.D. Cal. 2011) (positing that the Supreme Court's subsequent decision in *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 364 (2006) (holding that an insurer could recover settlement funds from a plan beneficiary because the plan at issue "specifically identified a particular fund, distinct from the [beneficiaries'] general assets . . . and a particular share of that fund to which [the insurer] was entitled"), would not affect *Foster II*, which was distinguishable in that "no funds were actually transferred to [the defendant]—[the plaintiff] merely s[ought] reimbursement for the costs it incurred for his training"  (quoting *Foster II*, 332 F.3d at 1238)).

Indeed, the Trustees explicitly state that their action is one for "breach of contract." Docket Item 7-6 at 2. That is, by their own words the Trustees seek "to remedy [Rossman's] breach of a *legal* obligation" rather than to obtain equitable relief. *See Foster II*, 332 F.3d at 1238 (emphasis added). Moreover, the Trustees do not suggest that the relief they seek includes "particular funds or property in the defendant's possession." *Id.* at 1237 (citation omitted). The Trustees' claim therefore appears deficient on its face. And to the extent the Trustees believe *Foster*, *Mertens*, and *Knudson* do not apply, they not only have made no effort to distinguish those cases, they do not even mention them.

What is more, the case on which the plaintiffs exclusively rely did not address the issue for which they cite it: whether a claim for breach of contract—seeking legal, not equitable, damages—is actionable under ERISA. *Howell*, instead, concerned whether certain fund trustees' adoption of a scholarship loan program was a violation of the fiduciary duties imposed by ERISA. 67 F.3d at 1337-38. It was not, the Seventh Circuit held, because those duties "appl[ied] only to the administration of a plan, not to its formation, amendment, or modification," and "the enactment of the [scholarship loan program] was an amendment." *Id.* at 1338 & n.3 (citing *Siskind v. Sperry Retirement Program, Unisys*, 47 F.3d 498, 505 (2d Cir.1995) (additional citations omitted).[3]  But "[t]he issue whether contract damages are available under [section] 1132(a)(3) was

---

[3] *See also Janese v. Fay*, 692 F.3d 221, 225-27 (2d Cir. 2012) (eliminating *Siskind*'s distinction between single-employer and multi-employer pension plans and holding that no employers act in a fiduciary capacity when modifying, adopting, or amending plans).

neither raised nor discussed on appeal" in *Howell*. *See Foster I*, 186 F. Supp. 2d at 1117 n.9.

In short, the Trustees have not established that they are entitled to judgment as a matter of law. Their motion for default judgment accordingly is denied. The denial is without prejudice, however. If the Trustees seek to renew their motion, they must address the deficiencies noted above. If the Trustees do not renew their motion within 90 days, the Clerk of Court shall dismiss the action under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that the plaintiff's motion for default judgment, Docket Item 7, is DENIED without prejudice; and it is further

ORDERED that the Clerk of Court shall mail a copy of this order to Rossman at his last known address:  917 Mohawk Street, Lewiston, NY, 14092; and it is further

ORDERED that if the plaintiffs do not renew their motion for default judgment—or otherwise take some action to prosecute this matter—within 90 days of the date of this order, the Clerk of Court shall close this case without further order.

SO ORDERED.

Dated:   September 1, 2020
         Buffalo, New York

                                      */s/ Lawrence J. Vilardo*
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE